Edwards v State Univ. Constr. Fund (2021 NY Slip Op 04174)





Edwards v State Univ. Constr. Fund


2021 NY Slip Op 04174


Decided on July 1, 2021


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered:July 1, 2021

531479
[*1]Stephen Edwards et al., Respondents-Appellants,
v
State University Construction Fund et al., Defendants and Third-Party Plaintiffs-Appellants-Respondents, and Tim Duffek Contracting, Inc., Respondent; Ralo Construction, Inc., Third-Party Defendant-Appellant.

Calendar Date:June 1, 2021

Before:Egan Jr., J.P., Lynch, Clark, Pritzker and Colangelo, JJ.

Law Offices of John Wallace, Syracuse (Michelle M. Davoli of counsel), for State University Construction Fund, defendant and third-party plaintiff-appellant-respondent.
Burke, Scolamiero & Hurd, LLP, Albany (Steven V. Debraccio of counsel), for Fahs Construction Group, Inc., defendant and third-party plaintiff-appellant-respondent.
Hannigan Law Firm PLLC, Delmar (Timothy C. Hannigan of counsel), for third-party defendant-appellant.
Coughlin & Gerhart, LLP, Binghamton (Thomas H. Bouman of counsel), for respondents-appellants.
Santacrose & Frary, Buffalo (Keith M. Frary of counsel), for respondent.



Lynch, J.
Appeal from an order of the Supreme Court (Coccoma, J.), entered May 19, 2020 in Otsego County, which, among other things, (1) denied motions by defendants State University Construction Fund and Fahs Construction Group, Inc. for summary judgment dismissing the complaint against them, (2) partially granted a motion by defendant Tim Duffek Contracting, Inc. for summary judgment dismissing the complaint against it, and (3) denied a motion by third-party defendant for summary judgment dismissing the third-party complaints.
Plaintiff Stephen Edwards was injured during the renovation of SUNY Oneonta's Physical Sciences Building (hereinafter the building) when he allegedly hit his head on a wooden beam supporting a scaffold, causing him to fall backwards down a set of stairs. At the time of his accident, Edwards was employed by third-party defendant, Ralo Construction Inc., a subcontractor that provided laborers for the project. Edwards and his wife, derivatively, commenced this action against defendants — the State University Construction Fund (hereinafter SUCF), Fahs Construction Group, Inc. and Tim Duffek Contracting, Inc. (hereinafter Duffek)[FN1] — alleging violations of Labor Law §§ 200 and 241 (6)[FN2] and claims for common-law negligence and loss of consortium. Defendants answered and asserted cross claims for, among other things, common-law and/or contractual indemnification. SUFC and Fahs also commenced separate third-party actions against Ralo asserting claims for, as relevant here, contractual indemnification and breach of contract. Ralo, in turn, answered the third-party complaints and asserted counterclaims for apportionment.
Following discovery, defendants and Ralo each moved for summary judgment seeking various relief. Supreme Court denied that part of the motions by SUCF and Fahs seeking dismissal of plaintiffs' complaint, partially granted Duffek's motion to the extent of dismissing the Labor Law § 241 (6) claim as asserted against it, ordered that SUCF and Fahs were entitled to contractual indemnification from Ralo and denied Ralo's motion seeking dismissal of the third-party complaints. With respect to the Labor Law § 200 and common-law negligence claims against SUCF and Fahs, the court initially found that Edwards' injury derived from a dangerous condition at the construction site and not from the manner in which the work was performed, thereby obviating the need to establish supervisory control over the means and methods of the work to hold SUCF and Fahs liable. Using a dangerous condition theory of liability, the court declined to dismiss the Labor Law § 200 and common-law negligence claims against SUCF and Fahs, finding questions of fact as to their authority to control the area where the accident occurred and their actual or constructive notice of the alleged dangerous condition.
As to the Labor Law § 241 (6) claims, Supreme Court determined that there was a triable issue of fact regarding the sufficiency of the lighting [*2]in the stairwell at the time of the accident, thereby precluding dismissal of that claim as asserted against SUCF and Fahs. However, the court agreed with Duffek that the Labor Law § 241 (6) claim could not be maintained against it because there was no proof that it was a statutory agent with responsibility for the alleged violation of 12 NYCRR 23-1.30. Finally, the court rejected Ralo's argument that the indemnification provision set forth in its subcontract agreement with Fahs violated General Obligations Law § 5-322.1, finding that SUCF and Fahs were entitled to contractual indemnification from Ralo. Plaintiffs, SUCF, Fahs and Ralo appeal.
SUCF and Fahs argue that Supreme Court erred in denying the branches of their motions for summary judgment seeking dismissal of the Labor Law § 200 and common-law negligence claims. We disagree. Labor Law § 200 "is a codification of the common-law duty imposed upon an owner or general contractor to provide construction site workers with a safe place to work" (Comes v New York State Elec. & Gas Corp., 82 NY2d 876, 877 [1993]; accord Stewart v ALCOA, Inc., 184 AD3d 1057, 1058 [2020]). "'Cases involving Labor Law § 200 fall into two broad categories: namely, those where workers are injured as a result of dangerous or defective premises conditions at a work site, and those involving the manner in which the work is performed'" (Gomez v 670 Merrick Rd. Realty Corp., 189 AD3d 1187, 1191 [2020], quoting Ortega v Puccia, 57 AD3d 54, 61 [2008]). Under the first category, "a general contractor may be held liable in common-law negligence and under Labor Law § 200 if it created the dangerous condition or had control over the work site and actual or constructive notice of the dangerous condition" (Eversfield v Brush Hollow Realty, LLC, 91 AD3d 814, 816 [2012]; see Tomlinson v Demco Props. NY, LLC, 189 AD3d 1294, 1295 [2020]; Card v Cornell Univ., 117 AD3d 1225, 1226 [2014]). An owner who retains control of the premises may be liable for injuries resulting from a dangerous condition at the work site only if the owner "created the condition or had actual or constructive notice of it, and failed to remedy the condition within a reasonable amount of time" (Harrington v Fernet, 92 AD3d 1070, 1071 [2012] [internal quotation marks and citation omitted] see Mendoza v Highpoint Assoc., IX, 83 AD3d 1, 9 [2011]; Cook v Orchard Park Estates, Inc., 73 AD3d 1263, 1264 [2010]; Wolfe v KLR Mech., Inc., 35 AD3d 916, 919 [2006]). Where, however, the injury derives from unsafe work practices, an owner or general contractor may be held liable only upon "a showing of supervisory control and actual or constructive knowledge of the unsafe manner of performance" (Card v Cornell Univ., 117 AD3d at 1226; see Ross v Curtis-Palmer Hydro-Elec. Co., 81 NY2d 494, 505 [1993]; Doskotch v Pisocki, 168 AD3d 1174, 1177 [2019]; Vogler v Perrault, 149 AD3d 1298, 1299 [2017]).
SUCF and Fahs maintain that Edwards' injury derived from the means and methods [*3]of the work performed, not from a dangerous condition. The evidence demonstrates otherwise. Plaintiffs' complaint alleges that, on January 27, 2016, Ralo assigned Edwards to perform work on the roof of the building, which required him to use the single internal stairwell. According to the complaint, as Edwards was ascending the stairs, he hit his head on a beam that was supporting a scaffold constructed over the stairwell, causing him to fall approximately 10 feet. Plaintiffs' bills of particulars also include a dangerous condition theory of liability [FN3] and the testimony elicited during the parties' depositions — transcripts of which were submitted by SUCF and Fahs in support of their motions for summary judgment — generally confirms that the accident occurred in the manner alleged. To that end, Edwards testified that, on the morning of the incident, he had been directed by Ivan Cote — the superintendent of the project and president of Ralo — to remove debris from the roof of the building. Edwards first positioned an extended lift flush with the roof as a makeshift dumpster, went inside and ascended the stairwell to access the roof, looking down at his feet while he walked to avoid potential trip hazards. As he was approaching the third floor, Edwards "all of a sudden" saw a "bright flash" and fell backwards. Edwards conceded that he did not see the beam prior to impact and while he could not specifically recall hitting anything, he denied having tripped on the stairs and posited, due to a cut on the bridge of his nose, that he had hit his head on the low clearance beam.
The deposition testimony of Jeffrey Rincavage, a carpenter who was employed by Duffek and was working in the stairwell at the time of the accident, generally supports that contention. Rincavage explained that Duffek was installing framing and drywall in the stairwell during the relevant time frame, necessitating the erection of the scaffold. As he and another Duffek employee were working in the stairwell, Rincavage saw Edwards pass him "in an awful hurry," taking the stairs two at a time while looking down. Rincavage then "heard a thump" and observed Edwards "falling backwards down the stairs," later giving consistent statements to the superintendent of Fahs and SUNY Oneonta police that Edwards had struck his head on the low clearance beam.
Although an owner or general contractor will not be held liable for a subcontractor's failure to furnish safe equipment (see generally Persichilli v Triborough Bridge & Tunnel Auth., 16 NY2d 136, 146 [1965]), as noted by Supreme Court, this is not such a case, as there is no assertion that the scaffold or the support beam were defective (compare Cappabianca v Skanska USA Bldg. Inc., 99 AD3d 139, 142 [2012]; Ortega v Puccia, 57 AD3d at 62). Nor did the injury derive from the manner in which the work was being performed (compare Villanueva v 114 Fifth Ave. Assoc. LLC, 162 AD3d 404, 406 [2018]; Kajo v E.W. Howell Co., Inc., 52 AD3d [*4]659, 661-662 [2008], lv denied 12 NY3d 713 [2009]). Rather, as Supreme Court emphasized, it was the placement of the beam that created the alleged hazard. Notably, the scaffold was erected prior to the accident, the injury did not derive from any work performed on the scaffold and Edwards was not engaged in his cleanup responsibilities at the time of the incident. In these circumstances, we agree with Supreme Court that only a dangerous condition theory of liability is viable and, therefore, no showing of supervisory control over the work was required to hold SUCF and/or Fahs liable for common-law negligence or a violation of Labor Law § 200 (see DeMercurio v 605 W. 42nd Owner LLC, 172 AD3d 467, 467 [2019]; Mitchell v T. McElligott, Inc., 152 AD3d 928, 929-930 [2017]; Steiger v LPCiminelli, Inc., 104 AD3d 1246, 1250 [2013]; Harrington v Fernet, 92 AD3d at 1071; Mott v Tromel Constr. Corp., 79 AD3d 829, 830 [2010]; Weinberg v Alpine Improvements, LLC, 48 AD3d 915, 918 [2008]).
Applying a dangerous condition theory, Supreme Court correctly found that the existence of a triable issue of fact precluded dismissal of these claims against SUCF and Fahs.[FN4] As to Fahs' control over the location where the incident occurred, Rincavage testified that, although no other contractor had helped Duffek erect the scaffold or support beam, representatives of Fahs were "in and out of the project daily," and had been to the subject stairwell prior to the accident. In that same vein, Mark Mertz, Duffek's supervisor, revealed that Brian LaLonde, the project engineer for Fahs, likely looked at the scaffold after it had been constructed, as did representatives from SUCF. Notably, Duffek's subcontract agreement with Fahs contained a provision stating that Duffek would "maintain a safe, uncluttered work environment at all times and [would] correct any condition that [Fahs] deem[ed] unsafe" (emphasis added). During LaLonde's deposition, he confirmed that Fahs was responsible for "[g]eneral oversight" of the project's safety, noting that if Fahs deemed something to be unsafe, it had the authority to stop work and direct necessary changes.
With respect to SUCF's retention of control over the premises, Michelle Grant, an associate project coordinator at SUCF, testified that her responsibilities included visiting SUCF's construction sites to obtain a "general overview of the status of the project" and "administer the construction contract." To that end, Grant had visited the site prior to the incident and had also visited the subject stairwell "more than one time, in various stages of construction." Although Grant maintained that the general contractor was responsible for safety on the site, she confirmed that, if she observed a safety concern during her site visits, she would bring it to the attention of Fahs. Similarly, Michael Kinsella, a site representative employed by SUNY Oneonta to manage projects undertaken by SUCF, explained that his responsibilities included [*5]overseeing the "day-to-day operations" of the project, requiring him to be in the building "every day" and to inspect the work being performed. Although he clarified that he did not get involved in the means and methods of a contractor's work and would not stop a contractor's work if he saw it being performed unsafely, he noted that he would inform the appropriate individual about safety issues.
As to Fahs' and SUCF's actual or constructive notice of the support beam, LaLonde had examined the scaffold in question prior to the incident and, on at least one occasion, had "duck[ed]" under the beam to pass through the stairwell. Although Grant did not identify any dangerous conditions in the stairwell upon her site visits, she similarly recalled having ducked under the clearance beam to pass through on at least one occasion, but could not remember whether that had occurred prior to the accident. Kinsella also revealed that he had accessed the roof through the stairwell around the time of Edwards' accident, where he ducked below the beam. In light of the foregoing, there are questions of fact as to the issues of control and notice sufficient to preclude dismissal of the common-law negligence and Labor Law § 200 claims against SUCF and Fahs (see Stewart v ALCOA, Inc., 184 AD3d at 1060 [2020]; Mitchell v T. McElligott, Inc., 152 AD3d at 930; Hall v Queensbury Union Free Sch. Dist., 147 AD3d 1249, 1253 [2017]; Cook v Orchard Park Estates, Inc., 73 AD3d at 1265).[FN5]
Nor did Supreme Court err in declining to dismiss the Labor Law § 241 (6) claim as asserted against SUCF and Fahs. "'Labor Law § 241 (6) imposes a nondelegable duty upon owners, contractors and their agents to provide adequate protection and safety for workers and, to establish a claim under this section, [a] plaintiff must allege that [the] defendants violated a rule or regulation promulgated by the Commissioner of Labor that sets forth a specific standard of conduct'" (Stewart v ALCOA, Inc., 184 AD3d at 1060, quoting Fassett v Wegmans Food Mkts., Inc., 66 AD3d 1274, 1277 [2009]; see Marshall v Glenman Indus. & Commercial Contr. Corp., 117 AD3d 1124, 1126 [2014]). In support of this claim, plaintiffs relied upon defendants' alleged violation of 12 NYCRR 23-1.30,[FN6] which requires sufficient illumination for safe working conditions on construction sites. There is a question of fact as to the sufficiency of the lighting at the time of the accident, with Edwards testifying that the staircase "wasn't lit up very well" and that it was hard to see beyond "probably four feet." Although Edwards testified that he "probably" would have seen the scaffold if he had looked up while ascending the stairs, his testimony in that regard was equivocal. Moreover, when shown a picture of the stairwell during his deposition, Edwards opined that the picture was too bright to be a fair representation of the lighting on the day in question, positing that the additional lighting could have come from the flash of [*6]the camera. Mertz also indicated that there had been issues with the lighting conditions in the stairwell, noting that drop lights had been installed prior to the accident because "in the mornings the stairwell was dark." In contrast, Rincavage and Cote opined that the lighting in the stairwell — consisting of both artificial light and natural light from a window — was adequate on the date of the accident. Given the conflicting testimony on this issue, Supreme Court properly found that a question of fact precluded dismissal of the Labor Law § 241 (6) claim against SUCF and Fahs (see Moura v City of New York, 165 AD3d 434, 434-435 [2018]; Hall v Queensbury Union Free Sch. Dist., 147 AD3d at 1252).
However, Supreme Court properly dismissed the Labor Law § 241 (6) claim against Duffek upon a finding that it was not a statutory agent that could be held liable for the alleged violation of 12 NYCRR 23-1.30.[FN7] The deposition testimony makes clear that Duffek was hired as a subcontractor to provide framing and drywall services in the building, and to erect metal studs and doorframes. Duffek's subcontract agreement obligated it to provide certain materials in connection with its work, but contained exclusions for "light" and "power." LaLonde confirmed that temporary lighting for the project was the responsibility of an electrical subcontractor, not Duffek. As no proof indicates that the provision of lighting in the stairwell was within the scope of the work delegated to Duffek, Supreme Court properly concluded that the Labor Law § 241 (6) claim against it based upon a violation of 12 NYCRR 23-1.30 could not be maintained.
With respect to Ralo's motion for summary judgment dismissing the contractual indemnification claims in the third-party complaints, Supreme Court properly concluded that the indemnification provision contained in Ralo's subcontract agreement with Fahs was enforceable. Under General Obligations Law § 5-322.1, indemnification provisions contained in construction contracts are void to the extent that they purport to indemnify parties for their own negligence (see Brooks v Judlau Contr., Inc., 11 NY3d 204, 207 [2008]; Billera v Merritt Constr., Inc., 139 AD3d 52, 59 [2016]; Cavanaugh v 4518 Assoc., 9 AD3d 14, 18 [2004]). Not only does the indemnification provision at issue include a savings clause providing indemnification only "[t]o the fullest extent permitted by law" (see Lesisz v Salvation Army, 40 AD3d 1050, 1051 [2007]), but, by its plain language, it obligated Ralo to indemnify SUCF for losses attributable to the actual or alleged negligence of Ralo or its employees, not of SUCF or Fahs. Accordingly, the provision does not run afoul of General Obligations Law § 5-322.1 (see Brooks v Judlau Contr., Inc., 11 NY3d at 207; Billera v Merritt Constr., Inc., 139 AD3d at 59). Nor is Ralo entitled to summary judgment dismissing the contractual indemnification claims on the basis that it was not negligent itself and cannot be held [*7]vicariously liable for any comparative fault attributable to Edwards. As noted by Supreme Court, under the agreement, Ralo agreed to provide indemnification for losses attributable to the actual or alleged negligent acts of Ralo or its employees. Therefore, Ralo's "indemnification obligations do not depend on a determination that it was actively negligent" (Miranda v Norstar Bldg. Corp., 79 AD3d 42, 50 [2010]; see Walls v Sano-Rubin Constr. Co., 4 AD3d 599, 602 [2004]). As the indemnification provision is enforceable, Supreme Court properly denied that part of Ralo's motion seeking dismissal of the claims for contractual indemnification against it.
That said, Supreme Court prematurely awarded contractual indemnification to SUCF and Fahs at the summary judgment phase, as "triable issues of fact [exist] as to whose negligence, if any, caused [Edwards'] accident" (Bellefleur v Newark Beth Israel Med. Ctr., 66 AD3d 807, 809 [2009]; see Spielmann v 170 Broadway, 187 AD3d 492, 494 [2020]; George v Marshalls of MA, Inc., 61 AD3d 925, 931 [2009]). Despite the broad language of the contractual indemnification provision — requiring indemnification for "actual or alleged" negligent acts of Ralo or its employees — issues of fact regarding negligence on the part of SUCF and Fahs preclude a determination of indemnification at this juncture (see Cook v Orchard Park Estates, Inc., 73 AD3d at 1266; Husted v Central N.Y. Oil & Gas Co., LLC, 68 AD3d 1220, 1224 [2009]).
Supreme Court also erred in denying that portion of Ralo's motion seeking dismissal of the claims for breach of contract in the third-party complaints, which were premised upon its alleged failure to procure an insurance policy as required by the subcontract agreement. Ralo established as a matter of law that it procured the required insurance policy, and neither SUCF nor Fahs opposed Ralo's motion seeking dismissal of such claims. The parties' remaining contentions, to the extent not expressly set forth herein, have been considered and found lacking in merit.
Egan Jr., J.P., Clark, Pritzker and Colangelo, JJ., concur.
ORDERED that the order is modified, on the law, without costs, by reversing so much thereof as (1) granted that part of the motions for summary judgment by defendants State University Construction Fund and Fahs Construction Group, Inc. as sought contractual indemnification from third-party defendant, and (2) denied that part of third-party defendant's motion for summary judgment as sought dismissal of the breach of contract claims against it; motions by said defendants denied to said extent and motion by third-party defendant granted to said extent and the breach of contract claims against it dismissed; and, as so modified, affirmed.



Footnotes

Footnote 1: SUFC owned the project site and Fahs was the general contractor. Duffek was a subcontractor which erected the subject scaffold and support beam using its own materials.

Footnote 2: Plaintiffs also asserted a Labor Law § 241 (1) claim, which they later withdrew in an amended bill of particulars.

Footnote 3: We are mindful that the bills of particulars also allege that SUCF and Fahs "had the authority to supervise and control the work of [Edwards and] the work of the [sub]contractor who designed and constructed the scaffold in question." Although such a showing of supervisory control must be made to hold a general contractor or owner liable for injuries resulting from the means and methods of the work performed, the bills of particulars make this allegation in the context of a dangerous condition theory of liability, stating that SUCF and Fahs "failed to exercise that authority and/or failed to prevent a dangerous condition to exist in the stairwell at the time of the incident" (emphasis added). In our view, the bills of particulars adequately set forth a dangerous condition theory of liability.

Footnote 4: All of the information referenced in this section was obtained from exhibits annexed to SUCF's motion, which Fahs incorporated by reference into its own motion.

Footnote 5: To the extent that SUCF argues otherwise, the fact that it did not create the dangerous condition at the work site does not, as a matter of law, vitiate its liability for common-law negligence or a violation of Labor Law § 200. The owner of a construction site who retains control of the premises may be held liable for injuries resulting from dangerous conditions if the owner "created the condition or had actual or constructive notice of it, and failed to remedy the condition within a reasonable amount of time" (Harrington v Fernet, 92 AD3d at 1071[internal quotation marks and citation omitted; emphasis added]; see Mendoza v Highpoint Assoc., IX, LLC, 83 AD3d at 9; Jurgens v Whiteface Resort on Lake Placid, 293 AD2d at 926).

Footnote 6: Plaintiffs raised other Industrial Code violations in their complaint, many of which Supreme Court deemed to be abandoned. Plaintiffs do not challenge that finding on appeal.

Footnote 7: Plaintiffs contend that Supreme Court erred in "focus[ing] on whose role it was to provide lighting," positing that Duffek can be held liable under Labor Law § 241 (6) simply because it was delegated control over the safety of the work and the stairwell in question. However, to establish a claim under Labor Law § 241 (6), there must be a showing that "a regulation setting forth a specific standard of conduct applicable to the working conditions" was violated (Hall v Queensbury Union Free Sch. Dist., 147 AD3d at 1251 [internal quotation marks and citations omitted]). As noted, Supreme Court found that plaintiffs had abandoned many of the Industrial Code violations alleged in the complaint, leaving claims relating only to 12 NYCRR 23-1.30 (illumination) and 12 NYCRR 23-2.1 (maintenance and housekeeping). Plaintiffs do not challenge that determination on appeal and a violation of 12 NYCRR 23-1.30 is not established merely by showing control over the safety of the work and the place where the injury occurred.