Eherts v Shoprite Supermarkets, Inc. (2021 NY Slip Op 06587)





Eherts v Shoprite Supermarkets, Inc.


2021 NY Slip Op 06587


Decided on November 24, 2021


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered:November 24, 2021

532289
[*1]Douglas Eherts et al., Respondents-Appellants,
v
Shoprite Supermarkets, Inc., Appellant- Respondent.

Calendar Date:October 22, 2021

Before:Garry, P.J., Lynch, Clark, Pritzker and Colangelo, JJ.

Torino & Bernstein, PC, Mineola (Vincent J. Battista of counsel), for appellant-respondent.
Orseck Law Offices PLLC, Liberty (Kirk O. Orseck of counsel), for respondents-appellants.



Lynch, J.
Cross appeals from an order of the Supreme Court (Meddaugh, J.), entered July 15, 2020 in Sullivan County, which partially denied defendant's motion for summary judgment dismissing the complaint and denied plaintiffs' cross motion for partial summary judgment.
On January 1, 2018, plaintiff Douglas Eherts, a plumber, was called to defendant's supermarket in Sullivan County to determine the cause of the store's low/no water pressure. Eherts' company was under contract with defendant to provide plumbing services in defendant's stores. Upon inspecting the premises, Eherts suspected that there was a municipal water main break beneath the store's parking lot and determined that it was necessary to turn off several of the store's water connections, including its main water valve, the ice machine and the hot water heater, which was at risk of overheating and having its pump burn out. The hot water heater was affixed to a platform above the store's meat cooler. To access the heater, Eherts had to climb a ladder placed against inventory shelving units and then step across the shelves on to the cooler. Each shelf was 8 feet in length and 30 inches deep, affixed to the wall by screws and supported by threaded metal rods hanging from the ceiling that were attached to the outer edge of the shelf. As Eherts stepped from the ladder onto one of the shelves to access the hot water heater, the shelf detached from the wall, causing him to fall and sustain injuries.
Eherts and his spouse, derivatively, commenced this action against defendant asserting violations of Labor Law §§ 200 and 240 (1). Defendant joined issue and, following discovery, moved for summary judgment dismissing the complaint, contending that Eherts was engaged in routine maintenance when the injury occurred and, accordingly, was not protected under Labor Law § 240 (1). As for the cause of action under Labor Law § 200, defendant asserted that it could not be held liable because it did not cause, create or have notice of the alleged dangerous condition. Plaintiffs opposed the motion and cross-moved for partial summary judgment on their Labor Law § 240 (1) claim, arguing that defendant was strictly liable because Eherts was engaged in "repair" work at the time of the accident and fell due to a defective safety device.
Supreme Court partially granted defendant's motion to the extent of dismissing the Labor Law § 240 (1) claim but denied the motion as to the Labor Law § 200 claim. The court determined, among other things, that Labor Law § 240 (1) did not apply in these circumstances because the hot water heater was not a structure within the meaning of the statute, the shelving unit could not be considered scaffolding and the injury did not occur on a construction worksite. In denying defendant's motion on the Labor Law § 200 claim, the court concluded that there were triable issues of fact on the elements of notice and control. Defendant appeals and plaintiffs cross-appeal.
Plaintiffs [*2]argue that Supreme Court erred in dismissing the Labor Law § 240 (1) claim because Eherts fell from a defective safety device while he was attempting to perform a protected activity — i.e., the repair of a structure. Labor Law § 240 (1) provides, in relevant part, that "[a]ll contractors and owners . . . in the . . . repairing . . . of a building or structure shall furnish or erect, or cause to be furnished or erected for the performance of such labor, scaffolding . . . ladders . . . and other devices . . . as to give proper protection to a person so employed." Initially, we agree with plaintiffs that Supreme Court erred in finding that the hot water heater is not a structure within the meaning of Labor Law § 240 (1). The court reasoned that plaintiff was required to establish "that the hot water heater [was] part of the structure of the building." That premise, however, misconstrues Labor Law § 240, which applies to enumerated activities involving a "building or structure" (emphasis added). By definition, a structure necessarily includes constructs distinct from the building itself (see McCoy v Abigail Kirsch at Tappan Hill, Inc., 99 AD3d 13, 15-17 [2012]). "Whether an item is or is not a 'structure' is fact-specific and must be determined on a case-by-case basis" (id. at 16).
The situation here is not one of a stand-alone hot water heater accessible at floor level. To the contrary, the record shows that the hot water heater is situated above one of the store's refrigerated units. The heater does not directly rest on top of the freezer, but on a platform suspended a few inches above the freezer by cables attached to the ceiling. The heater has a gas turnoff adjacent to it and an electric breaker switch on the actual heater. There is a shelf that runs along the top of the freezer unit that protrudes out about three feet from the freezer, approximately 12 feet above the floor surface. To access the heater, it was necessary to place a ladder against the shelf, and step over the shelf to reach the heater platform. In our view, this configuration constitutes a structure within the embrace of Labor Law § 240 (1) (see id. at 17).
The question turns to whether Eherts was engaged in repair work at the time of the accident or, instead, was performing routine maintenance. When Eherts arrived at the store, he noticed a puddle of water in the parking lot and suspected that a municipal water main line had broken. In his deposition, Eherts explained that, although he was not responsible for fixing the water main break, it was critical that he shut down the water systems inside of the store pending the repair of the water main. As such, he turned off the store's main water valve and the electric power to the ice machine. To turn off the hot water heater, Eherts needed to access the heater platform and turn off both the gas valve and electric switch. In attempting to do so, as soon as Eherts stepped from the ladder onto the shelf, the shelf collapsed [*3]and he fell to the floor below.
This Court has recognized "that 'repairs' implicate Labor Law § 240 (1) liability whereas 'routine maintenance' does not" (Pakenham v Westmere Realty, LLC, 58 AD3d 986, 987 [2009] [internal quotation marks and citations omitted]; see Markou v Sano-Rubin Constr. Co., Inc., 182 AD3d 674, 675 [2020]). Routine maintenance "involves 'replacing components that require replacement in the course of normal wear and tear'" (Alexander v Hart, 64 AD3d 940, 943 [2009], quoting Esposito v New York City Indus. Dev. Agency, 1 NY3d 526, 528 [2003]). The events here did not occur during a routine scheduled maintenance call. Instead, on New Year's Day, Eherts was responding to an isolated and unexpected event, i.e., to address a low/no water pressure issue at the store caused by a municipal water main break. His direct response was to take preventative measures to, among other things, avoid damage to the hot water heater by shutting the system off. That was his acknowledged purpose when he ascended the ladder to the heater platform. In these circumstances, we conclude that Eherts was engaged in repair work at the time of the accident, bringing his conduct within the protection of Labor Law § 240 (1) (see Pakenham v Westmere Realty, LLC, 58 AD3d at 987-988; Caraciolo v 800 Second Ave. Condominium, 294 AD2d 200, 201-202 [2002]; see also Saint v Syracuse Supply Co., 25 NY3d 117, 120 [2015] [rejecting the defendant's contention that the court "should limit (its) analysis of (the) plaintiff's activity to the moment of his injury" when determining whether the plaintiff was engaged in the type of work covered by Labor Law § 240 (1)]; Short v Durex Div.-Hooker Chems. & Plastic Corp., 280 AD2d 972, 972 [2001]).[FN1]
Having so found, the question remains whether any triable issue of fact exists on the Labor Law § 240 (1) claim that would require resolution by a factfinder. The parties agree on the underlying facts of the incident and the manner in which it occurred as described above. Defendant did not submit any evidence refuting Eherts' claim that it was necessary to turn the hot water heater off in response to the low/no water pressure issue. Nor is there any dispute that the shelf was used as part of the pathway to access the heater platform. Accordingly, we conclude that plaintiffs are entitled to judgment as a matter of law on the Labor Law § 240 (1) claim (see CPLR 3212 [b]).
Supreme Court properly denied defendant's motion for summary judgment as it related to the Labor Law § 200 claim. Where, as here, the accident occurred as a result of an alleged dangerous condition on the premises,[FN2] an owner who retains control of the premises may be liable under Labor Law § 200 if the owner " 'created the condition or had actual or constructive notice of it, and failed to remedy the condition within a reasonable amount of time'" (Edwards v State University Construction Fund, 196 AD3d 778, 780 [2021], quoting Harrington v Fernet, 92 AD3d [*4]1070, 1071 [2012]; see Mendoza v Highpoint Assoc., IX, LLC, 83 AD3d 1, 9 [2011]).
According to Eherts, the shelving units had been in place since he started servicing defendant's store in 2001. In his deposition, Anthony J. Faber, defendant's store manager, confirmed that Eherts and his associates had previously used the shelving units to access the hot water heater, explaining that, to his knowledge, that was the only practical means of accessing it. Faber confirmed that the shelving units were present "all the time throughout the approximate seven years that [he] worked" at the location, he did not know who had installed them and that, if anything was damaged on the premises, he would submit a work order for someone to come fix it. On these submissions, factual questions remain as to whether defendant installed the shelving units, how the shelf at issue failed and whether defendant had actual or constructive notice of the alleged defective condition (see Edwards v State Univ. Constr. Fund, 196 AD3d at 783-784; Stewart v ALCOA, Inc., 184 AD3d 1057, 1060 [2020]). In our view, defendant failed to make a prima facie showing that it lacked actual or constructive knowledge that the shelf presented a dangerous condition given the acknowledged use of the shelf to access the heater over an extended period of time.[FN3]
Garry, P.J., Clark, Pritzker and Colangelo, JJ., concur.
ORDERED that the order is modified, on the law, with costs to plaintiffs, by reversing so much thereof as partially granted defendant's motion for summary judgment and dismissed the Labor Law § 240 (1) cause of action and denied plaintiffs' cross motion for partial summary judgment; defendant's motion denied to said extent, plaintiffs' cross motion granted, and summary judgment awarded to plaintiffs on the Labor Law § 240 (1) cause of action; and, as so modified, affirmed.



Footnotes

Footnote 1: Supreme Court's finding that Labor Law § 240 (1) did not apply because "[Eherts did not] establish that [the accident occurred on] a construction worksite" is incorrect. The Court of Appeals has explained that "the reach of [Labor Law § 240 (1)] is not limited to work performed on actual construction sites" as long as the injured plaintiff was engaged in one of the activities enumerated in the statute (Martinez v City of New York, 93 NY2d 322, 326 [1999]). Moreover, the fact that the shelving units are not scaffolding in the traditional sense of that term is of no moment in this case. Labor Law § 240 (1) applies to defective "scaffolding, hoists, stays, ladders, slings, hangers, blocks, pulleys, braces, irons, ropes, and other devices" supplied to perform the work (emphasis added).

Footnote 2: Defendant does not dispute that this is a "dangerous condition" rather than a "means and methods" case.

Footnote 3: Because defendant did not make a prima facie showing, Supreme Court properly denied its motion as it related to the Labor Law § 200 claim even though plaintiffs did not oppose that portion of defendant's motion (see Alvarez v Prospect Hosp., 68 NY2d 320, 324 [1986] ["Failure to make such prima facie showing requires a denial of the motion, regardless of the sufficiency of the opposing papers."]).